IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Kenneth E. Smith, II,**

       **Plaintiff,**

v.                                                            Case No. 15-2591-JWL

**City of Mission, Kansas; and**
**Benjamin J.M. Hadley,**

       **Defendants.**

## MEMORANDUM & ORDER

Plaintiff filed a one-count complaint under 42 U.S.C. § 1983 against the City of Mission, Kansas and Chief of Police Benjamin J.M. Hadley alleging that defendants suspended, demoted and constructively discharged plaintiff, a former police officer, in retaliation for plaintiff's exercise of his First Amendment right to speak on matters of public concern. Defendants move to dismiss plaintiff's complaint for failure to state a claim on the grounds that plaintiff's speech did not address a matter of public concern and, accordingly, is not entitled to First Amendment protection. In addition, defendant Hadley asserts that he is entitled to qualified immunity on plaintiff's claim against him in his individual capacity and that plaintiff's claim against him in his official capacity should be dismissed as duplicative of plaintiff's claim against the City. As will be explained, the motion is granted in part and denied in part.

**Background**

Defendants' motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007))). Consistent with this standard, the following well-pleaded allegations, taken from plaintiff's complaint, are accepted as true for purposes of defendants' motion.

Plaintiff Kenneth E. Smith, II was employed by the City of Mission, Kansas as a police officer from 2003 until mid-2014. Plaintiff possesses a Bachelor of Science degree in Criminal Justice, a Master's degree in Business Administration and a Master's Certificate in Criminal Justice Education. He is a graduate of the FBI's Law Enforcement Executive Development Program and the FBI National Academy. In early 2014, plaintiff self-published a non-fiction book entitled "Anyone Can Be Average: Leading a Law Enforcement Organization," which provided expertise to the general public on organizational leadership. In his book, plaintiff provided anecdotes from plaintiff's own experience for illustrative purposes. As alleged in his complaint, plaintiff authored the book in his individual capacity as a private citizen. Plaintiff did not identify himself in the book as an employee of the City and did not identify any other employee of the City.

In August 2014, defendant Benjamin J.M. Hadley, the Chief of Police for the Mission Police Department, suspended plaintiff's employment; decreased plaintiff's compensation; and

demoted plaintiff to the rank of Police Officer because he authored the book.  Plaintiff alleges that he was constructively discharged at the conclusion of the 120-day suspension.

**Discussion**

Defendants move to dismiss plaintiff's complaint for failure to state a claim on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  According to defendants, plaintiff's speech is unprotected because it did not address a matter of public concern.  In the alternative, defendant Hadley contends that he is qualifiedly immune from plaintiff's claim and that plaintiff's official capacity claim against him should be dismissed because it is duplicative of plaintiff's claim against the City.

*Protected Speech*

In their motion to dismiss, defendants urge that dismissal of plaintiff's First Amendment claim is required because the content of plaintiff's book is not protected speech.  A "public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment."  *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 140 (1983)).  "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).  However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests "in promoting the efficiency of the

3

public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

The Court in *Pickering* sought to achieve this balance through the adoption of a four-part test to be implemented in public-employee, free-speech cases. *Id.* at 724. In *Garcetti*, the court expanded on the *Pickering* test by adding a fifth, threshold inquiry that seeks to determine whether the speech at issue was made pursuant to the public employee's official duties. *Id.* (citing *Garcetti*, 547 U.S. at 421). Thus, after *Garcetti*, "it is apparent that the '*Pickering*' analysis of freedom of speech retaliation claims is a five step inquiry which we now refer to as the '*Garcetti/Pickering*' analysis." *Id.* (citations omitted). The *Garcetti/Pickering* test thus includes the following inquiries:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)). The first three inquiries are ordinarily matters of law for the court to decide, while the last two are for the factfinder. *Fields v. City of Tulsa*, 753, F.3d 1000, 1014 (10th Cir. 2014).

Defendants challenge only the second prong of this test—whether plaintiff's speech was on a matter of public concern. At the outset, the court rejects defendants' argument that plaintiff's speech, as a matter of law, is not protected because plaintiff, through his book, did not intend to "bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a

4

governmental entity." Contrary to defendants' suggestion, protected speech is not limited to speech concerning governmental wrongdoing. While protected speech certainly includes speech concerning governmental wrongdoing, *see Eisenhour v. Weber County*, 744 F.3d 1220, 1228 (10th Cir. 2014), the Circuit has never construed protected speech so narrowly. Rather, speech involves a public concern "if it involves a matter of interest to the community." *Nixon v. City & County of Denver*, ___ F.3d ___, 2015 WL 1935251, at *2 (10th Cir. Apr. 30, 2015); *accord Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014) (speech involves matters of public concern "when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"). As Judge Posner of the Seventh Circuit has "forcefully" stated:

> [T]he protections of the First Amendment are not limited to "matters of transcendent importance, such as the origins of the universe or the merits of constitutional monarchy" but encompass all "matters in which the public might be interested." *Dishnow v. Sch. Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996). "That the public was not large, that the issues were not of global significance, and . . . not . . . vital to the survival of Western civilization [does] not place [ ] speech outside the orbit of [First Amendment] protection." *Id*.

*Lander v. Summit County Sch. Dist*., 109 Fed. Appx. 215, 220 (10th Cir. 2004).

The court acknowledges, however, that plaintiff's complaint does not present a set of facts to which courts, including the Tenth Circuit, have typically applied the "matter of public concern" analysis. Rather, courts typically apply that analysis "when a public employee speaks out about her employer's policies, conduct, or other issues more directly related to her public employment." *See Craig v. Rich Township High Sch. Dist. 227*, 736 F.3d 1110, 1116 n.2 (7th Cir. 2013). While plaintiff's book certainly touches upon plaintiff's personal experience

5

working in law enforcement (and, arguably, his experience working as a police officer for the City of Mission even though he does not mention this employer or any other employer or employee by name), the "content, form and context" of plaintiff's speech indicates that the purpose of plaintiff's book is not to air personal grievances about his employer (which likely would not be entitled to protection) or to notify the public about a work-related issue about which the public might be concerned (which likely would be entitled to protection). *See Craig*, 736 F.3d at 1116 & n.2.; *Nixon*, ___ F.3d at ___ ("'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.' We consider 'the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.' In particular, speech that exposes official impropriety generally involves matters of public concern, while 'speech that simply airs grievances of a purely personal nature typically does not.'" (citations omitted)).[1]

A review of the content of plaintiff's book reveals that he relies on work-related anecdotes and criticisms as a platform for pressing his views about achieving effective leadership in organizations generally and in law enforcement organizations specifically. The book includes chapters on creating and understanding a "resilient leadership team," on achieving and assessing "organizational clarity" through the identification of core values, mission statements and the like, and on the significance of effective communication from an

---

[1] Defendants have attached plaintiff's book to their submissions. Because plaintiff referenced his book in his complaint, and the book is central to his claims, the court may consider the substance of the book without converting defendants' motion into one for summary judgment. *See Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).

organization's leadership. Thus, plaintiff, through his book, is participating in a public dialogue on organizational leadership generally and, more specifically, effective leadership within law enforcement agencies. To be sure, some segment of the public would be interested in this issue. No more is required to bring plaintiff's book within the ambit of First Amendment protection. *See Nixon*, ___ F.3d at ___ (speech involves a public concern "if it involves a matter of interest to the community"); *Craig*, 736 F.3d at 1117 (the fact that high school guidance counselor's "provocative" book on adult relationships "dealt with a subject of general interest to the public" was enough to establish prima facie First Amendment protection; dismissal of complaint was appropriate in any event because school's interests in restricting speech outweighed counselor's speech interest in light of potential disruption caused by book). Defendants' motion is denied on this issue.[2]

*Qualified Immunity*

Plaintiff asserts a § 1983 claim against defendant Hadley in his individual and official capacities. Defendant Hadley moves to dismiss the individual capacity claim on the grounds of qualified immunity. The doctrine of qualified immunity shields government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In resolving a motion to dismiss based on qualified immunity, a court must consider

---

[2] In their reply, defendants counter that plaintiff's book is not likely to lead to "significant debate about the pros and cons of organizational leadership" and does not contribute a "new or different view" concerning organizational leadership. Defendants do not refer the court to any authority applying those requirements to the "public concern" analysis.

"whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Because the court has already determined that plaintiff's speech was protected such that he has alleged the violation of a constitutional right, the court turns to analyze whether that right was clearly established at the time of the alleged violation.[3]

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Clearly this standard does not require a precise factual analogy to pre-existing law; however, the plaintiff must demonstrate that the unlawfulness of the conduct was apparent in light of pre-existing law." *Id*. (citation omitted). This preexisting law must consist of either "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts. *Id*.

Plaintiff urges that the Circuit's decision in *Flanagan v. Munger*, 890 F.2d 1557 (10th Cir. 1989) is sufficient to put defendants on notice that plaintiff's termination was unlawful. *See*

---

[3] The court uses the phrase "alleged" violation because although the court has determined that plaintiff's speech was protected, an employer does not necessarily violate the First Amendment by discharging an employee for speaking out on a matter of public concern. The government is entitled to restrict such speech if it can prove that the interest of the employee as a citizen in commenting on the matter is outweighed by the interest of the government employer in promoting effective and efficient public service. *See Fields v. City of Tulsa*, 753 F.3d 1000, 1013 (10th Cir. 2014). The court expects that this issue will be addresses at the summary judgment stage.

*Lynch v. Barrett*, 703 F.3d 1153, 1161 (10th Cir. 2013) (for "clearly established" prong of qualified immunity analysis, focus is on whether officer had fair notice that conduct was unlawful). The court disagrees. In *Flanagan*, several Colorado Springs police officers sued the police chief and city, alleging that their First Amendment rights were violated when they were issued reprimands for owning a video store that rented pornographic films. *Flanagan*, 890 F.2d at 1560–61. In considering the plaintiffs' appeal from an adverse summary judgment ruling, the Circuit held that the public concern test did not apply to the case because the case involved employees engaged in "nonverbal protected expression neither at work nor about work." *Id.* at 1562. Here, plaintiff clearly engaged in verbal expression and that expression related, at least in part, to a work-related subject. Unlike the situation in *Flanagan*, then, the "public concern" test applies to this case and plaintiff does not suggest otherwise. While *Flanagan* recognized that the officers' expression was protected by the First Amendment and that the officers' "substantial" interest in the expression outweighed the defendants' interest in preventing the expression, the *Pickering* balance test applied by the Circuit in *Flanagan* is not even at issue yet in this case. Defendants here have challenged only the "public concern" element of plaintiff's claim. On that issue, *Flanagan* is not relevant and simply does not speak to whether a reasonable officer, in August 2014, had fair notice that plaintiff's speech was protected because it touched on a matter of public concern.

Nonetheless, the court has little difficulty in rejecting defendant Hadley's qualified immunity defense. The law has been clearly established since 1968 that public employees may not be discharged in retaliation for speaking on matters of public concern absent a showing that the government employer's interest in the efficiency of its operation outweighs the employee's

interest in the speech. *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996); see also *McFall v. Bednar*, 407 F.3d 1081, 1090 (10th Cir. 2005) (clearly established that a government employee cannot be terminated for speaking out on matters of public concern); *Hulen v. Yates*, 322 F.3d 1229, 1239-40 (10th Cir. 2003) (well-established that retaliation in the form of an involuntary transfer for protected speech is prohibited). Moreover, in the specific context of this case, the court concludes that established Tenth Circuit law was sufficient to put defendant Hadley on notice that plaintiff's speech touched on a matter of public concern such that it was protected by the First Amendment. As noted earlier, the Circuit has never limited protected speech to speech concerning governmental wrongdoing. Speech on a matter of public concern is generally defined as "speech fairly considered as relating to any matter of political, social, or other concern to the community." *Considine v. Board of County Comm'rs*, 910 F.2d 695, 699 (10th Cir. 1990) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). By expressing himself in a book, plaintiffs clearly directed his speech to the public at large and the book is devoid of any complaints concerning a particular employment practice of decision involving the City of Mission. Plaintiff's book, then, goes beyond a discussion of internal workplace issues but informs the public on issues regarding effective leadership in law enforcement agencies. A reasonable official, then, who had read plaintiff's book would have understood that the book addressed an issue "of interest to the community." *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998) ("Matters of public concern are those of interest to the community."). For these reasons, defendant Hadley is not entitled to qualified immunity on plaintiff's claim.

*Official Capacity Claim*

10

Lastly, defendant Hadley moves to dismiss the official capacity claim against him on the grounds that the claim is duplicative of plaintiff's claim against the City. Plaintiff opposes this aspect of the motion, relying on the absence of Tenth Circuit precedent requiring dismissal of the official capacity claim. While the Circuit has not squarely addressed this issue, courts routinely dismiss official capacity claims against municipal officials when claims are also asserted against the city itself. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (official capacity claims properly dismissed as duplicative of claims against City); *Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."); *Love–Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (district court correctly dismissed claim against superintendent in his official capacity as duplicative of claim against Board).

Because plaintiff's official capacity claim against defendant Hadley is "the same" as plaintiff's claim against the City, *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official capacity suit is simply a suit against the entity or county), and in the absence of any persuasive reason to maintain the claim, the court grants defendant Hadley's motion to dismiss plaintiff's official capacity claim against him as redundant of the claim against the City.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss plaintiff's complaint (doc. 6) is granted in part and denied in part.

11

**IT IS SO ORDERED.**

Dated this 15th day of May, 2015, at Kansas City, Kansas.

                                                    <u>s/ John W. Lungstrum</u>
                                                    John W. Lungstrum
                                                    United States District Judge